## No. 2319

### Second Circuit

---

## MOTION PICTURE ADVERTISING SERVICE CO., INC., v. HOLLYWOOD CREAMERY CO., INC., ET AL.

---

(November 10, 1927.  Opinion and Decree.)

---

(*Syllabus by the Editor*)

1.  Louisiana Digest—Appeal—Par. 625.
    The finding of the trial court on matters of fact, where clearly correct, are affirmed.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo.  Hon. T. F. Bell, Judge.

Action by Motion Picture Advertising Service Company, Incorporated, against Hollywood Creamery Company, Inc., et al.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Charles F. Crane, Cook & Cook, of Shreveport, attorneys for plaintiff, appellee.

Herndon & Herndon, of Shreveport, attorneys for defendant, appellant.

ODOM, J.  On November 7, 1921, plaintiff and defendants entered into a written contract under the terms of which plaintiff was to ship to the Saenger theatres certain motion picture advertisements featuring the defendants' dairy products, to be run as *slides one day in each week for a period* of three months, for a consideration of $75.00 per month.

On February 22nd, following, a similar contract was made to run for one year from that date at $15.00 per week.

The latter contract to be subject to cancellation after twenty-six weeks.

Plaintiff brings this suit, alleging that the service was rendered according to the contract, amounting to $1023.75, and that defendants have paid only $420.75, leaving a balance due it of $603.00.

Defendants, Hollywood Creamery Company, Inc., and Herndon, filed a joint answer in which Herndon set up that at the time the contract was signed he was the sole owner of the Hollywood Creamery Company and that about April 17, 1922, he sold to other parties, who incorporated in September of that year under the name Hollywood Creamery Company, Incorpo-

rated, and that said corporation "took over the contract of date February 22, 1922, sued on herein".

The corporation's answer admitted that it did take over said contract and alleged that thereafter on November 2, 1922, the contract was cancelled by mutual agreement, and that on that date he paid the balance due under the contract.

There was judgment for plaintiff against Herndon and the corporation in solido for $603.00, the amount sued for.

Herndon appealed.

### OPINION

Only questions of fact are involved.

Herndon's only defense is that he sold his creamery and dairy business on April 17, 1922, and that the parties to whom he sold took over (assumed) his contract. But he admits that he did not notify plaintiff that he had sold, did not ask for a release from it, and did not notify the Saenger theatres, where the slides were shown, that he was no longer interested.

He does not plead nor testify that he was released by plaintiff.

It is not denied that plaintiff, through the Saenger theatres, rendered the service called for by the contract; so that under Herndon's answer and his own testimony he is bound, unless the service has been paid for, and he does not, on his own behalf, make that plea.

But giving him the full benefit of the plea, made by his co-defendant, the corporation, that the contract was cancelled on November 2, 1922, and that the full amount due thereunder was paid, at that time, he is in no better plight, because the corporation failed to make that proof.

Mr. Houston, bookkeeper for the corporation, said, when called by plaintiff on cross-examination, that on or about November 2, 1922, Mr. Johnson, representing the plaintiff, called on him at his office and that he, Houston, paid him, by check, $130.75, which was the total amount due, and that Johnson agreed to stop or cancel the contract.

But when called for defendants (evidence, page 31), he said that he had asked more than thirty days prior to that time that the contract be cancelled; and he was asked (testimony, page 32):

"Q. Did he (Johnson) promise at that time to stop it?
"A. He promised me that he was going to New Orleans and would see to it; see if he could not have it stopped right away.
"Q. Did he tell you he could stop it?
"A. No, sir.
"Q. Tell you that he would stop it?
"A. No, sir.
"Q. Explain what he told you about it?
"A. He said it was all right, that he was going to New Orleans and would see to it, would get it stopped."

It will therefore be seen that, according to Houston's own testimony, there was no agreement at that time to cancel the contract.

Johnson swore positively that he made no agreement; that the question as to the cancellation of the contract was never mentioned to him by Houston; that he called on Houston to collect the amount due at that time, which was $478.75, and that Houston said he could not pay the full amount but gave him a check for $130.75, which left a balance of $348.00.

Houston admits that he took no final receipt and that he did not note on the check that it was in full settlement.

We find no error in the judgment and it is accordingly affirmed. Costs in the lower court to be paid by defendants jointly. Costs of the appeal to be paid by Herndon.